FILED

MAR 1 2 2010

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA,        )
                                 )
          Plaintiff,             )
                                 )
v.                               )    Case No. CR-10-003-RAW
                                 )
RODNEY LEDELL CARTER and         )
DREW SAMUEL BATES,               )
                                 )
          Defendants.            )

**FINDINGS AND RECOMMENDATION**

This matter comes before this Court on the Motion to Suppress filed by Defendant Rodney Ledell Carter on February 9, 2010 (Docket Entry #47) in which Defendant Drew Samuel Bates joins as stated in his Motion to Suppress Evidence and Statements filed February 9, 2010 (Docket Entry #49). On February 19 and 23, 2010, this Court conducted an evidentiary hearing and received documentary and testimonial evidence in support and opposition to the Motion. Upon review of these documents filed by the parties and consideration of the evidence presented, this Court renders these Findings and Recommendation.

On December 10, 2009 at approximately 9:51 a.m., Trooper Vern Roland ("Roland") with the Oklahoma Highway Patrol ("OHP") was working traffic enforcement on U.S. Highway 69 in Atoka County, Oklahoma. Trooper Roland testified he observed a 2008 Chrysler 300 repeatedly traveling northbound and moving in and out of traffic without signaling. Trooper Roland activated his lights which, in turn, activated the dash camera in his patrol unit. The vehicle

pulled to the side of the highway with Trooper Roland's unit behind.

Trooper Roland noted that the driver's side window was partially open. As Trooper Roland approached the vehicle, the driver's side door opened and Defendant Rodney Ledell Carter ("Carter") emerged. Trooper Roland states that he noticed the "overwhelming odor of green marijuana" coming from the vehicle. He further explained that the wind was blowing from the north toward him. Trooper Roland states that he believed he had probable cause to search Defendants' vehicle based upon the smell of marijuana. Trooper Roland asked Carter for his driver's license and Carter returned to his car to retrieve his shoes, which he was not originally wearing when he got out of his vehicle. Also during this time, Trooper Alan Murray of the Oklahoma Highway Patrol was also patrolling the area and passed the scene. Trooper Roland signaled Trooper Murray, who was carrying a drug sniffing dog in his unit, to turn around and pull over.

Carter re-emerged from the vehicle. He stated he did not have a driver's license with him. Trooper Roland asked for the identity of the passenger in Carter's vehicle, which Carter provided, then sent Carter to Trooper Roland's patrol unit to sit in the front seat. Carter complied.

Trooper Roland then entered Defendants' vehicle from the driver's side door to speak with Defendant Drew Samuel Bates

("Bates"), the passenger. Trooper Roland asked Bates for his driver's license but was provided an identification card issued by the State of Oklahoma.

Trooper Roland indicated that he noted the presence of a marijuana cigar blunt in the ash tray of the console of the subject vehicle. He also stated he saw raw marijuana flakes in the carpeting. Trooper Roland noted the presence of numerous air fresheners in the vehicle.

Trooper Roland seized the blunt but did not log it as evidence. Instead, Trooper Roland put the blunt in his locker in the Sheriff's office. He did not retrieve the flakes from the vehicle's carpeting. After a delay in the evidentiary hearing, the blunt was retrieved from Trooper Roland's locker and presented in court.

Trooper Roland then withdrew from the vehicle and spoke to Trooper Murray, who had turned his unit around and arrived at the scene. Trooper Roland asked Trooper Murray to retrieve the insurance verification from the vehicle. He also informed Trooper Murray of his detection of the smell of marijuana. Trooper Roland returned to his patrol unit. Trooper Murray approached the driver's side of the subject vehicle, which still had its window rolled down. Trooper Murray nodded to Trooper Roland indicating he smelled marijuana as well. Trooper Murray entered the subject vehicle from the driver's side door, then withdrew.

Trooper Murray then returned to his vehicle to retrieve his dog. While Trooper Murray lead his dog to sniff around the subject vehicle, Trooper Roland told Carter that he smelled marijuana in the subject vehicle. Trooper Murray's drug dog hit upon the subject vehicle, indicating to Trooper Roland and Trooper Murray that drugs were present in the vehicle. Trooper Murray then went to the passenger side of Trooper Roland's unit where Carter was seated. He asked Carter whether any marijuana was present in the car. Trooper Murray also told Carter he could smell marijuana.

In the meantime, Trooper Roland called the OHP dispatcher with the information he had obtained from Carter. Trooper Roland asked Carter any marijuana use, which Carter denied.

Trooper Roland asked Carter to sign his name to the warning he was writing. Trooper Roland states "that's all I have." As Carter began to exit the unit, Trooper Roland inquired as to whether he could ask him more questions. Trooper Roland asked Carter for permission to search his vehicle. Carter declined. Trooper Roland told Carter he did not need his permission to search the vehicle because the drug dog detected the presence of drugs in the vehicle. Trooper Roland then asked Carter to empty his pockets. Carter produced $2,000.00 in cash which he stated he intended to use at the casinos. Trooper Roland told Carter to take a seat back in his patrol unit.

Bates was told to exit the subject vehicle and was patted

down. Bates was moved to the back seat of Trooper Roland's patrol unit.

Trooper Roland and Trooper Murray searched the subject vehicle. Trooper Roland searched the trunk of the vehicle, including luggage located in the trunk while Trooper Murray searched the interior of the vehicle. Trooper Murray found a bag which contained loose dryer sheets and a box of Vista laundry detergent. Both Trooper Roland and Trooper Murray indicated they believed the box of laundry detergent had been opened and resealed based upon the presence of excess glue. In their experience in drug interdiction, the troopers indicated dryer sheets are used by those trafficking in drugs to mask the smell.

Trooper Murray opened the box of laundry detergent and found plastic bags with a white powdery substance. The substance was field tested, which indicated the substance was cocaine.

Defendants first challenge the basis for the traffic stop, contending Carter did not violate the traffic ordinance which allegedly serves as the justification for Trooper Roland's stop. Defendants contend Carter was required to change lanes due to the presence of stationary law enforcement vehicles. Defendants are referring to the presence of the size and weight enforcement unit checking semi-tractor trailer traffic for compliance with transportation regulations. Trooper Roland, however, stated that he stopped Defendants because the lane changes were made without

signaling in violation of Okla. Stat. tit. 47 § 11-309(2). Without question, the initial stop of Defendants was appropriate, since Trooper Roland observed the violation of a traffic ordinance. United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995). Defendants raise some side issues in regard to the stop which do not bear upon this Court's determination on the propriety of the stop. Carter suggested some improper motivation or withholding of evidence due to some confusion regarding the capabilities of the camera in Trooper Roland's patrol unit and when the camera begins recording. Regardless of the camera's technology, no evidence was presented to indicate any recording preserved by the camera has been withheld by the United States or the OHP. Additionally, by all accounts, no recording was made of the actual traffic violation. Trooper Roland's account of the violation, however, is credible that it did occur.

Defendants next contend Trooper Roland made an illegal entry into the subject vehicle after he sent Carter to sit in his patrol unit. Defendants argue Trooper Roland detected the odor of marijuana at that time. The evidence developed from the hearing indicates Trooper Roland detected the smell of marijuana upon approach to the vehicle, not upon entry of the vehicle. His testimony and his detection of the odor is confirmed by both Trooper Murray and Brian Epps ("Epps"), the agent from the Drug Enforcement Administration, who testified he saw the subject

6

vehicle at the wrecker service facility where it was towed on the afternoon of the stop. Epps stated he smelled marijuana emanating from the vehicle upon approaching it at the wrecker service.

The question then arises whether the smell of marijuana constituted probable cause to search the subject vehicle. "Probable cause to search a vehicle is established if, under the 'totality of the circumstances [,]' there is a 'fair probability' that the car contains contraband or evidence." United States v. Downs, 151 F.3d 1301, 1303 (10th Cir. 1999) citing United States v. Nielsen, 9 F.3d 1487, 1489-90 (10th Cir. 1993). Raw marijuana poses a special circumstance for probable cause, since "the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage." Id. citing United States v. Morin, 949 F.2d 297, 300 (10th Cir. 1991). As in Downs, Trooper Roland and Trooper Murray stated they smelled "green" marijuana. The scope of a warrantless search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." Id. citing United States v. Ross, 456 U.S. 798, 824 (1982). While the smell of marijuana usually only provides probable cause to search the confined area of the smell, the presence of the odor of marijuana suggests "there is a fair probability that the car is being used to transport large quantities of marijuana and that the marijuana has been secreted in places other than the passenger compartment." Id.

Additionally, the alert upon the vehicle by the drug dog gave the officers probable cause to search the vehicle. United States v. Williams, 403 F.3d 1203, 1207 (10th Cir. 2005). Defendants challenge the reliability of the dog used in this stop. Trooper Murray, the dog's handler, testified the dog used in this case underwent yearly reliability testing through a CLEET program and was certified by that agency. He also testified concerning his behavior patterns when he detects narcotics and his actions during the specific traffic stop involved in this case. A drug detection dog's reliability is primarily established by the dog's training and certification. United States v. Kennedy, 131 F.3d 1371, 1378 (10th Cir. 1997). The dog involved in this case was of sufficient reliability, as demonstrated through its training and certification, to provide probable cause for the search in this case.

While this Court accepts Trooper Roland's statements concerning the detectable smell of marijuana as confirmed by other witnesses, some aspects of Trooper Roland's actions are inescapably troubling. Trooper Roland testified he did not typically approach a vehicle from the driver's side due to the potential for being struck by passing traffic. Trooper Roland's fear, however, is belied by his opening of the driver's door and leaning across the seat to speak to the passenger. If the smell of marijuana had not been present, this action of entering the vehicle without

8

permission would have in all probability constituted an improper search. Moreover, Trooper Roland's conduct with regard to securing marijuana found in the subject vehicle is inexplicable, given that this marijuana formed the foundation for the search of the vehicle. This conduct, while suspect and of dubious motivation, does not invalidate the search of the vehicle, either through the entry to speak with Bates or the subsequent full blown search which uncovered the cocaine.

Defendants also assert the search of the box of laundry detergent was improper, alleging no probable cause existed for opening the box. Again, the appearance of the box to which both Trooper Roland and Trooper Murray testified as well as the presence of the dryer sheets in the same area provided the law enforcement officers with probable cause to open the box without first obtaining a warrant. Additionally, probable cause to search a vehicle includes probable cause to search containers within the vehicle which are capable of containing the contraband for which probable cause was originally established. United States v. Stewart, 473 F.3d 1265, 1270 (10th Cir. 2007) citing California v. Acevedo, 550 U.S. 565, 580 (1991). The troopers had probable cause to search the containers, including the box of detergent within the subject vehicle.

IT IS THEREFORE THE RECOMMENDATION OF THIS COURT that the Motion to Suppress filed by Defendant Rodney Ledell Carter on

February 9, 2010 (Docket Entry #47) and the Motion filed by Defendant Drew Samuel Bates adopting Defendant Carter's suppression request filed February 9, 2010 (Docket Entry #49) be **DENIED**.

The parties are herewith given fourteen (14) days from the date of the service of these Findings and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendation within fourteen (14) days will preclude appellate review of the judgment of the District Court based on such findings.

IT IS SO ORDERED this 12th day of March, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

10