# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-10-03-RAW |
| | ) | |
| RODNEY LEDELL CARTER and | ) | |
| DREW SAMUEL BATES, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the court are the objections of both defendants to the Findings and Recommendation of the United States Magistrate Judge, who recommended the denial of the pending motions to suppress[1]. The defendants do not contest the basic outline of events, which will be briefly recounted. Trooper Vern Roland ("Roland") testified he observed a traffic violation (changing lanes without signal) by the car containing both defendants.

Upon approaching the vehicle, Roland testified he smelled "an overwhelming odor of green or raw marijuana" coming from the vehicle. (Tr. I, 20.19-20). Roland signaled his partner, Trooper Alan Murray ("Murray"), to pull his own vehicle over to the site of the traffic stop. (Tr.II, 96.24-25). Murray testified that before his arrival at the scene he had also seen the alleged traffic violation. (Tr. II, 87.13-18; 89.7-13). Murray also testified that after his arrival at the scene he too smelled the odor of marijuana from the car. (Tr. II, 80.2-3).

---

[1] The court's order (#104) gave the government until May 6, 2010 to respond to the objections. The government's response was not filed until May 12, 2010. The court has determined not to strike the response.

Murray testified he is a canine officer. (Tr. II, 79.14). He lead his dog to sniff around the subject vehicle, and the dog "alerted". (Tr. II, 84.11-15). The troopers searched the vehicle and discovered plastic bags of cocaine secreted in a box of laundry detergent.

Defendants correctly note that when objections are made to the Magistrate Judge's factual findings based on conflicting testimony or evidence, de novo review is required. *See Gee v. Estes,* 829 F.2d 1005, 1008-1009 (10th Cir.1987). Here, defendants expressly challenge the credibility of Roland, who initiated the traffic stop. The court has accordingly reviewed the transcripts of the evidentiary hearing[2] and the other evidence presented.

Traffic stops are analyzed under the "reasonable suspicion" rubric set out in *Terry v. Ohio,* 392 U.S. 1, 27 (1968). *See United States v. Bravo,* 306 Fed.Appx. 436 (10th Cir.2009). The first inquiry under *Terry* is whether the stop was justified at its inception. *United States v. Williams,* 403 F.3d 1203, 1206 (10th Cir.2005). A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. *Id.* (quoting *United States v. Botero-Ospina,* 71 F.3d 783, 787 (10th Cir.1995)). In the case at bar, defendants challenge the validity of the initial stop.

During the hearing, defendants scored palpable hits on Roland's credibility as to certain matters. Defendant Carter cites the principle of *falsus in uno, falsus in omnibus* and contends that allegedly false or misleading statements by Roland render "all of his testimony

---

[2] There are two transcripts because the evidentiary hearing was commenced on February 19, 2010 and continued to February 23, 2010.

2

unworthy of belief, whether or not portions of his story are corroborated by others." (Carter's Objection at 13)(footnote omitted). The court disagrees with this contention, in that independent authentication or corroboration are recognized exceptions to the doctrine. *See Siewe v. Gonzales,* 480 F.3d 160, 170 (2d Cir.2007). As noted, Murray also testified that he observed the traffic violation. His testimony on this point was not challenged. The defendants raise a serious concern. As one district court has observed: "If an officer is inclined to fabricate traffic violations, all traffic laws become potential 'stop-at-will' mechanisms." *United States v. Jimenez,* 2009 WL 2905933 (E.D.Tenn.)[3]. The court is not persuaded that this is such a case, and concludes the stop was justified at its inception.

The second *Terry* inquiry is whether the officer's conduct during the detention was reasonably related in scope to the circumstances which justified the initial stop. *Williams,* 403 F.3d at 1206. An officer may detain a motorist for questioning unrelated to the initial traffic stop if he has an objectively reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning. *Id.* The government does not rely upon consent in this case.

Here, Roland's testimony that he smelled an overwhelming odor of "green or raw marijuana" strains credulity, as there was no evidence of green or raw marijuana in the vehicle. A smell of marijuana, however, was also confirmed by Murray and by DEA agent

---

[3] Such a circumstance aside, it is established that a court generally does not look beyond the observed traffic violation to the subjective intent of the officer in order to determine whether the traffic stop is a "pretext" for pursuing some other investigatory purpose. *See Bravo* at 440.

Brian Epps (Tr. II, 111.22-25; 112.10). Epps encountered the vehicle after it had been impounded. The court finds the second inquiry under *Terry* is also satisfied.

Accordingly, the court finds that the vehicle was only detained for "as long as it takes to perform the traditional incidents of a routine traffic stop." *United States v. Branch,* 537 F.3d 328, 335 (4th Cir.2008). *See also United States v. Karam,* 496 F.3d 1157, 1161 (10th Cir.2007). Even apart from the marijuana smell, neither defendant was able to produce a driver's license, and thus could not continue to legally operate the vehicle. (Tr. I, 23.21-25). This justified extension of the stop. A canine sniff on the exterior of a vehicle during a lawful traffic stop does not implicate legitimate privacy interests. *Williams,* 403 F.3d at 1207. A canine alert gives rise to probable cause to search a vehicle. *Id.* Moreover, officers are not required to base their decision to use a drug-detection dog to sniff the car on a reasonable suspicion of illegal activity. *United States v. Castaneda,* 2010 WL 653575 (10th Cir.), citing *Illinois v. Caballes,* 543 U.S. 405 (2005).

At the conclusion of his objection, defendant Bates asks the court in the alternative to remand the matter to the Magistrate Judge "for additional evidence regarding the capacity of the recording equipment utilized by the Oklahoma State Patrol to record evidence of the actual traffic violations alleged to support the stop of defendants' vehicle." The court declines to do so. The topic appears to have been exhausted at the evidentiary hearing, and defendants appear to be arguing not that a lane change did not occur, but that such lane change was justified. This is a subjective judgment call for the law enforcement officer.

4

It is the order of the court that the Findings and Recommendation of the Magistrate Judge are affirmed and defendants' objections are overruled. The motion of defendant Carter to suppress (#47) and the motion of defendant Bates to suppress (#49) are hereby DENIED.

**ORDERED THIS 17th DAY OF MAY, 2010.**

**Dated this 17th Day of May 2010.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma

j4h4i0